**IN THE UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| LINDA FRANKLIN, | No. CIV S-08-0850-CMK |
| Plaintiff, | |
| vs. | MEMORANDUM OPINION AND ORDER |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |
| _____/ | |

Plaintiff, who is proceeding with retained counsel, brings this action for judicial review of a final decision of the Commissioner of Social Security under 42 U.S.C. § 405(g). Pursuant to the written consent of all parties, this case is before the undersigned as the presiding judge for all purposes, including entry of final judgment. See 28 U.S.C. § 636(c). Pending before the court are plaintiff's motion for summary judgment (Doc. 17) and defendant's cross-motion for summary judgment (Docs. 19 & 20).

/ / /

/ / /

/ / /

# I. PROCEDURAL HISTORY

Plaintiff applied for social security benefits in June 2005.[1] In the application, plaintiff claims that disability began on December 17, 2004, though she alleges in her motion for summary judgment that she did not become disabled until November 23, 2005.  In her motion for summary judgment, plaintiff claims that disability is caused by a combination of chronic pulmonary obstructive disease ("COPD"), asthma, chronic knee pain and swelling due to arthritis, and chronic low back pain radiating into her leg as a result of an auto accident on November 23, 2005.  Plaintiff's claim was initially denied.  Following denial of reconsideration, plaintiff requested an administrative hearing, which was held on June 26, 2007, before Administrative Law Judge ("ALJ") Alan K. Goldhammer.  In an October 19, 2007, decision, the ALJ concluded that plaintiff is not disabled based on the following relevant findings:

1. The prior decision does not have preclusive effect because plaintiff's knee impairment arose after the prior decision was issued;

2. Plaintiff's severe impairments include: COPD, asthma, and bilateral knee osteoarthritis;

3. No severe low back impairment or mental impairment is established;

4. Plaintiff's severe impairments do not meet or medically equal an impairment set forth in the regulations;

5. Plaintiff retains the following residual functional capacity: she can perform sedentary work with limited bending, stooping, and crouching; no exposure to atmospheric irritants, such as fumes, dusts, and noxious gases;

6. No other non-exertional limitations are established and plaintiff's symptom allegations to the contrary are not credible; and

7. Based on plaintiff's residual functional capacity, and in light of vocational expert testimony, the claimant is able to perform her past relevant work as a receptionist/greeter and telemarketer.

After the Appeals Council declined review on March 21, 2008, this appeal followed.

---

[1] Plaintiff previously filed an application on October 31, 2003, alleging disability beginning on November 11, 2002.  The claim was denied after an administrative hearing and plaintiff did not seek further review.

## II. SUMMARY OF THE EVIDENCE

The certified administrative record ("CAR") contains the following evidence, summarized below. Because plaintiff's motion for summary judgment focuses only on COPD, knee arthritis, and low back problems, the court will only summarize evidence relating to those specific impairments. In particular, plaintiff does not raise any arguments concerning mental impairments.

### A. Plaintiff's Summary

Regarding, COPD/asthma, plaintiff provides the following summary:

> Ms. Franklin has a long history of shortness of breath with periodic asthma attacks. *See, e.g.,* AR, pp. 170, 200, 248. Measurements of the degree to which she gets enough oxygen, her oximetry scores, are sometimes slightly below normal at 96%. AR, pp. 170, 188. Serial x-rays show hyper-expansion of the lungs with coarseness of interstitial markings consistent with chronic pulmonary disease. AR, pp. 219, 255, 257. Ms. Franklin uses albuterol, Atrovent, Azmacort, and Q-var for her pulmonary problems, and they generally keep her out of the emergency room, although she was seen there in January 2006. AR, pp. 234, 272.

Plaintiff summarizes the evidence relating to her knee problems as follows:

> In March 2005 Ms. Franklin began complaining of knee pain. AR, p. 190. The pain continued, and in July 2005 she was noted to have swelling in the right knee. AR, pp. 179, 181. Her physician at Highland Hospital observed swelling and warmth of the right knee, and he drained fluid from the joint. AR, pp. 242-243. An x-ray from November 2005 showed effusions (swelling) in both knees. AR, p. 148. Social Security's consultative examiner, Dr. Dang, reported diminished range of motion on the right knee, mild effusions, and mild-moderate tenderness along the anterior aspect of the joint. AR, pp. 141-142. Dr. Dang diagnosed arthritis of the right knee, possibly due to degenerative joint disease. AR, p. 142. Ms. Franklin used Vicodin, Naprosyn, and Motrin for pain. AR, pp. 234-234, 339. Even with frequent use of her medication, she has minimal pain control. AR, p. 339.

Regarding low back pain, plaintiff provides the following summary of the evidence:

> On November 23, 2005, a car rear-ended Ms. Franklin twice while she was waiting for a light to change. AR, p. 292. Shortly thereafter she was examined by a chiropractor who noted diminished lumbar range of motion, myospasm of the right lumbar musculature, and a moderate amount of lumbosacral and sacroiliac joint pain. *Id.* In December 2005 Ms. Franklin continued to complain of low back pain. AR, pp. 238, 290. She went to the emergency room in January 2006 for low back pain and

3

paralumbar muscle spasm. AR, pp. 260-261. In November 2006 Ms. Franklin had demonstrable weakness in her lower extremities and hips. AR, p. 279. She underwent an MRI of the lumbar spine in November 2006 that revealed 304 mm of spondylolisthesis (slippage of one vertebra relative to another) of L5 on S1 and minimal desiccation of the L5-S1 disc. AR, p. 277. Her physicians at Highland Hospital diagnosed right lumbar radiculopathy. AR, pp. 279, 281. Throughout 2006 and 2007 she continued to complain of back pain with radicular symptoms. *See, e.g.* AR, 00. 263, 272, 275, 276, 279. As noted above, she frequently takes pain medications, including Vicodin, with limited benefit. AR, p. 339.

Dr. Boakye, the treating physician at Highland Hospital, concluded that Ms. Franklin is unable to persist at full-time work because of her chronic pain problem. AR, pp. 225, 274. Similarly, Dr. Bhatega at the Newark Heath Center concluded that Ms. Franklin could only tolerate part-time work due to her asthma and knee pain. AR, p. 177.

### B. Chronological Summary

<u>May 17, 2004</u> – Plaintiff reported to the emergency room at Highland Hospital incident to an "asthma attack" which began a week earlier. (CAR 252). Plaintiff reported relief with inhalers and, on physical examination, was not in any acute distress or obvious discomfort.

The same day, x-rays were taken of plaintiff's chest. (CAR 255). As reported by Ronald Eisenberg, M.D., the films were consistent with COPD.

<u>March 17, 2005</u> – Dr. Eisenberg reported on x-rays of plaintiff's chest. (CAR 219). He indicated that the x-rays were consistent with COPD.

<u>June 16, 2005</u> – Dr. Eisenberg reported on an x-ray of plaintiff's right knee. (CAR 194). He indicated that the x-ray revealed "no bony or significant soft tissue abnormality."

<u>July 18, 2005</u> – Plaintiff reported to the emergency room at Highland Hospital complaining of right leg and hip swelling and pain. (CAR 244). The nurse triage notes indicate that plaintiff stated this problem had persisted for the previous two months. On physical examination, plaintiff was observed to be in no acute distress or obvious discomfort.

<u>July 25, 2005</u> – A nurse at Highland Hospital completed a form entitled "Ambulatory Healthcare Services Triage Form." (CAR 177). On this form, the nurse reported the following: "Pt. in today requesting that Dr. Bhatega provide info. to Dept. of Social Services regarding her condition including new dx. of arthritis at [right] knee." Plaintiff told the nurse that

she wanted her doctor "to emphasize that she is unable to work because of her health problems." No doctor's notes or signatures appear on this document, nor are any objective findings on physical examination noted.

<u>August 27, 2005</u> – Agency examining doctor Christian Dang, M.D., reported on a comprehensive internal medicine evaluation. (CAR 140-43). At the time, plaintiff's chief complaints were arthritis of the right knee, headache, asthma, and stress/anxiety. As to arthritis-related knee pain, plaintiff reported that she had been having such pain for the previous three months. She was seen at Highland Hospital in July 2005, at which time x-rays were normal. Plaintiff was provided Vicodin for pain and sent home. Plaintiff told Dr. Dang that her right knee pain is worse with standing or walking for extended periods, but improves somewhat with sitting, especially with her right knee elevated. Plaintiff also stated that Vicodin helps relieve pain. Regarding asthma, Dr. Dang noted:

> This was diagnosed in 2000. She is currently in therapy. She says her last ER visit was about a year ago. At that time she required nebulizer treatment. She states she has never been hospitalized or intubated with regards to her asthma. She now reports mild shortness of breath as well as dyspnea on exertion.

Following a physical examination, Dr. Dang provided the following diagnoses: (1) arthritis of the right knee with "concern for possible degenerative joint disease"; and (2) asthma currently well controlled on inhalers. He offered the following functional assessment:

> Based on objective findings, the number of hours that the claimant could be expected to stand and walk in an eight hour day is about four hours. This limitation is due to her right knee pain, concern for possible DJD. The number of hours the claimant can be expected to sit in an eight hour day is about six hours. This limitation is again due to her right knee pain.
>
> The claimant does use a cane for ambulation at all times on all terrains. I would say this is medically necessary until she is evaluated by orthopedic surgery. She would also benefit from further x-rays.
>
> The amount of weight that claimant could lift and carry frequently is less than 10 lbs. The amount of weight the claimant could lift and carry occasionally is 10-15 lbs. This limitation is due to her right knee pain with required use of a cane.

>There are postural limitations in bending, stooping, or crouching, and these can be done occasionally. This limitation is due to her right knee pain.
>
>There are no manipulative limitations on reaching, handling, feeling, grasping, or fingering. These tasks can be done frequently.
>
>There are no relevant visual or communicative limitations. The claimant will have some workplace environmental limitations while she is currently using a cane. She may need a work environment with handicapped accessability.

Dr. Dang did not note any limitations related to plaintiff's asthma, which he opined was well-controlled.

<u>October 21, 2005</u> – Stuart S. London, M.D., reported on an x-ray of plaintiff's knee. (CAR 148). He noted "very mild degree of left patellofemoral osteoarthritis" and suspected "small bilateral joint effusions."

<u>November 8, 2005</u> – Agency consultative doctor Huseini K. Haveliwafa, M.D., completed a physical residual functional capacity assessment. (CAR 149-56). He opined that plaintiff could: (1) lift/carry 20 pounds occasionally and 10 pounds frequently; (2) stand/walk for six hours in an eight-hour workday; (3) sit six hours in an eight-hour workday; (4) and push/pull without limitation. He did not note any postural, manipulative, visual, or communicative limitations. The doctor did, however, opine that plaintiff should avoid concentrated exposure to extreme cold, extreme heat, wetness, humidity, noise, and fumes/odors/gases/dusts.

<u>November 29, 2005</u> – Robert Norlinger, D.C., of the Norlinger Chiropractic Office prepared an "Initial Report" which was submitted to State Farm Insurance company. (CAR 292). The doctor indicated that, on November 23, 2005, plaintiff was the passenger in a vehicle that was rear-ended twice while waiting for a light to change. Plaintiff reported the following complaints:

>Constant moderate bilateral and low neck pain with stiffness. Constant moderate mid back pain. Constant moderate low back pain, more pronounced on the right sacral iliac joint. Frequent moderate frontal headaches.

1  The doctor noted that x-rays showed "degenerative disc changes at C5, C6, & C7." The
2  following other objective findings were reported:

> Foramina Compression and Soto Hall evaluations produced moderate lower neck pain. Cervical range of motion was restricted with moderate lower neck pain. Right spasm of the upper Trapezius muscle was noted. Myospasm of the right rhomboid was palpated as was right lumbar musculature. Lumbar range of motion was restricted with moderate lumbo-sacral and S1 joint pain reported.

That same day, plaintiff completed a "Functional Rating Index" report as part of her initial consultation with Dr. Norlinger. (CAR 297-98). She reported severe pain, greatly disturbed sleep, inability to do any work activity, and constant pain associated with recreational activities, lifting, walking, and standing.

January 11, 2006 – Records from Rhodes Chiropractic indicate that plaintiff complained of low back tenderness. (CAR 286, 288). It appears that she was receiving treatment incident to an automobile accident which occurred on November 23, 2005. Plaintiff complained that her existing pain symptoms were exacerbated by the accident.

January 14, 2006 – The record contains a "Trauma – Back & Trunk" report prepared at St. Rose Hospital incident to an injury the day before which occurred at home. (CAR 260-61). Plaintiff reported mild sharp pain exacerbated by movement with no associated symptoms such as radiation to the leg. On physical examination, plaintiff had full range of motion in the back, through tenderness and muscle spasm were noted. Plaintiff's respiration was clear bilaterally. The examining doctor diagnosed thoracic strain and prescribed pain medication.

January 17, 2006 – The record contains an "Emergency Department Record" prepared by a doctor at Highland Hospital. (CAR 283). It is unclear why plaintiff reported to the hospital on this date. On physical examination, the doctor noted normal respiration, and no "vertebral tenderness" in the back.

/ / /

/ / /

March 14, 2006 – Plaintiff's treating physician – Douglas Boakye, M.D. – prepared a "Treating Source Statement." (CAR 224-25). The doctor opined that plaintiff could stand/walk for eight hours a day, but did not provide any opinion on plaintiff's ability to sit upright. He also said that plaintiff could lift/carry up to 10 pounds both occasionally and frequently. Dr. Boakye opined that plaintiff could only occasionally bend, stoop, reach, handle, and finger. He concluded that plaintiff could not persist in full-time work due to chronic pain. There are no objective findings noted in Dr. Boakye's report.

November 29, 2006 – An MRI of plaintiff's spine was performed which showed spondylolisthesis and minimal degenerative disc desiccation at L5-S1, but no disc herniation, spinal stenosis, or paraspinal pathology. (CAR 277).

December 13, 2006 – A doctor at Highland Hospital noted that the MRI showed "no compression of cord or nerves." (CAR 276).

May 9, 2007 – Dr. Boakye completed a functional assessment for Alameda County Social Services. (CAR 273-74). He noted plaintiff's history of asthma, depression, anxiety, and chronic pain, and concluded that plaintiff was unable to perform any type of work. As with his prior assessment, no objective findings are noted.

### III.  STANDARD OF REVIEW

The court reviews the Commissioner's final decision to determine whether it is: (1) based on proper legal standards; and (2) supported by substantial evidence in the record as a whole. See Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999). "Substantial evidence" is more than a mere scintilla, but less than a preponderance. See Saelee v. Chater, 94 F.3d 520, 521 (9th Cir. 1996). It is ". . . such evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 402 (1971). The record as a whole, including both the evidence that supports and detracts from the Commissioner's conclusion, must be considered and weighed. See Howard v. Heckler, 782 F.2d 1484, 1487 (9th Cir. 1986); Jones

8

v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985). The court may not affirm the Commissioner's decision simply by isolating a specific quantum of supporting evidence. See Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989). If substantial evidence supports the administrative findings, or if there is conflicting evidence supporting a particular finding, the finding of the Commissioner is conclusive. See Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987). Therefore, where the evidence is susceptible to more than one rational interpretation, one of which supports the Commissioner's decision, the decision must be affirmed, see Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002), and may be set aside only if an improper legal standard was applied in weighing the evidence, see Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th Cir. 1988).

## IV. DISCUSSION

In her motion for summary judgment, plaintiff raises the following arguments: (1) the ALJ erred in concluding that plaintiff's low back impairment is not severe; and (2) the ALJ failed to state appropriate reasons for rejecting the opinion of Dr. Boakye. The court notes that plaintiff does not challenge the ALJ's analysis as to any other medical opinion, nor does she challenge the ALJ's adverse credibility finding.

### A. Severity Determination

In order to be entitled to benefits, the plaintiff must have an impairment severe enough to significantly limit the physical or mental ability to do basic work activities. See 20 C.F.R. §§ 404.1520(c), 416.920(c).[2] In determining whether a claimant's alleged impairment is sufficiently severe to limit the ability to work, the Commissioner must consider the combined effect of all impairments on the ability to function, without regard to whether each impairment

---

[2] Basic work activities include: (1) walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) seeing, hearing, and speaking; (3) understanding, carrying out, and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co-workers, and usual work situations; and (6) dealing with changes in a routine work setting. See 20 C.F.R. §§ 404.1521, 416.921.

alone would be sufficiently severe. See Smolen v. Chater, 80 F.3d 1273, 1289-90 (9th Cir. 1996); see also 42 U.S.C. § 423(d)(2)(B); 20 C.F.R. §§ 404.1523 and 416.923. An impairment, or combination of impairments, can only be found to be non-severe if the evidence establishes a slight abnormality that has no more than a minimal effect on an individual's ability to work. See Social Security Ruling ("SSR") 85-28; see also Yuckert v. Bowen, 841 F.2d 303, 306 (9th Cir. 1988) (adopting SSR 85-28). The plaintiff has the burden of establishing the severity of the impairment by providing medical evidence consisting of signs, symptoms, and laboratory findings. See 20 C.F.R. §§ 404.1508, 416.908. The plaintiff's own statement of symptoms alone is insufficient. See id.

Plaintiff argues that the ALJ incorrectly determined that her low back impairment is not severe. As to this impairment, the ALJ stated:

> Although counsel argues that severe lumbar spondylolisthesis also exists, I find no significant low back impairment. References from Highland describe mild diffuse pain (Exhibit 12F, pp. 8, 6), with the later record at Exhibit 15F not showing anything other than subjective complaints of back pain. When seen in August 2005 by consulting (CE) physician, Dr. Dang, the claimant did not even mention low back pain (Exhibit 4F). Dr. Dang's examination of the low back was totally benign. While counsel makes much of the November 2006 MRI scan of the lumbar spine, this study identified only minimal disc desiccation with no stenosis [narrowing] or other lumbar disc abnormality. The treating doctor read the MRI as showing no evidence of spinal cord compression (Exhibit 15F, pp. 7, 6). Thus, there is no objective medical basis for allegations of radiculopathy.

The ALJ also addressed whether other conditions – such as polyarthritis, rheumatoid arthritis, or fibromyalgia – could account for plaintiff's complaints relating to her low back:

> Likewise, despite references in the record to "polyarthritis," the treating physician, Dr. Boakye, rather carefully only refers to a reported **history** of polyarthritis rather than endorsing this as a medically determinable impairment. *See also* Exhibit 12F, p. 3 ["multiple joint pains secondary to polyarthritis vs. fibromyalgia vs. RA (rheumatoid arthritis)"].
>
> I conclude that no proven "severe" inflammatory arthritis exists. The mere citation of an historical diagnosis cannot be equated to the existence of a medically determinable impairment, especially considering the problems with the claimant's credibility and her obvious tendency to exaggerate her symptoms and subjective limitations (*see* discussion of credibility below). There are no reports of findings of swelling, stiffness, redness in the joints,

or warm or hot joints, except for the claimant's knee joints and the knee complaints have been adequately explained by the osteoarthritis [degenerative joint disease] described above. There is no proven fibromyalgia or rheumatoid arthritis. Dr. Dang made no trigger point findings. Lab results showed normal sedimentation rate (ESR), negative RA factor, and negative ANA test (Exhibit 12F, p. 7).

Plaintiff argues: (1) contrary to the ALJ's analysis, the MRI showed significant abnormality relating to the low back; (2) Dr. Dang's failure to mention low back problems in his August 2005 report is irrelevant because her low back problems were the result of the auto accident which occurred in November 2005; and (3) contrary to the ALJ's analysis, there is sufficient objective medical evidence of a severe low back impairment to "get Ms. Franklin past the *de minimus* step two test, as there is not a 'total absence of objective evidence of a severe medical impairment.'" At the outset, the court agrees with plaintiff that Dr. Dang's failure to report low back pain should not have formed a basis for the ALJ's severity analysis because, as plaintiff indicates, Dr. Dang's report was authored in August 2005, but plaintiff's low back pain was the result of a November 2005 automobile accident. Given the timeline involved, Dr. Dang's failure to comment on low back pain is not inconsistent with the existence of a severe low back impairment.

As to the November 2006 MRI, the ALJ stated that it showed "only minimal disc desiccation with no stenosis [narrowing] or other lumbar disc abnormality." The ALJ also noted that a doctor at Highland Hospital characterized the MRI as "showing no evidence of spinal cord compression." Plaintiff contends that, contrary to the ALJ's conclusion, the MRI showed "3-4 mm of spondylolisthesis" and that this supports the conclusion that plaintiff suffers from radiculopathy. According to plaintiff, the MRI evidence alone propels her case past the level of evidence required to conclude there is severe low back impairment.

/ / /

/ / /

The court does not agree. As indicated above, a finding that an impairment is non-

severe is appropriate where the evidence establishes no more than a minimal effect on the ability to work. The court presumes that this is the "*de minimus*" standard to which plaintiff refers in her brief. However, the question is not whether there is something more than a total absence of evidence of an impairment, as plaintiff suggests. Rather, the question is whether the impairment has more than a minimal effect on the ability to work. The court accepts for the moment plaintiff's argument that the MRI evidence and other evidence of record shows that she in fact suffers from a low back impairment. There is no objective medical evidence, however, that such impairment has any more than a minimal effect on plaintiff's ability to work.

The burden is on the claimant to establish the existence of a severe impairment and, in this case, plaintiff has produced no objective evidence dated after plaintiff's November 2005 automobile accident (which she claims gave rise to her low back impairment) relating to the effect of low back problems on her ability to work. Immediately after her accident, plaintiff was seen by a chiropractor, Dr. Norlinger. This doctor, however, primarily noted plaintiff's subjective complaints and, in any event, did not express any opinion on the effect of low back problems on plaintiff's ability to work. Similarly, records from Rhodes chiropractic primarily reflect plaintiff's subjective pain complaints and do not contain any opinions as to plaintiff's ability to work. Contrary to plaintiff's position, a January 2006 "Trauma – Back & Trunk" report prepared at St. Rose Hospital reveals that plaintiff had full range of motion in the back. The examining doctor diagnosed thoracic strain and prescribed pain medication, but made no statements about plaintiff's ability to work. Finally, a doctor at Highland Hospital reported on a June 2006 "Emergency Department Record" that, on physical examination, he observed no "vertebral tenderness" in the back.

For all these reasons, the court finds that the ALJ correctly concluded that plaintiff's low back impairment is not severe.

/ / /

### B. Evaluation of Dr. Boakye's Opinion

The weight given to medical opinions depends in part on whether they are proffered by treating, examining, or non-examining professionals. See Lester v. Chater, 81 F.3d 821, 830-31 (9th Cir. 1995). Ordinarily, more weight is given to the opinion of a treating professional, who has a greater opportunity to know and observe the patient as an individual, than the opinion of a non-treating professional. See id.; Smolen v. Chater, 80 F.3d 1273, 1285 (9th Cir. 1996); Winans v. Bowen, 853 F.2d 643, 647 (9th Cir. 1987). The least weight is given to the opinion of a non-examining professional. See Pitzer v. Sullivan, 908 F.2d 502, 506 & n.4 (9th Cir. 1990).

In addition to considering its source, to evaluate whether the Commissioner properly rejected a medical opinion the court considers whether: (1) contradictory opinions are in the record; and (2) clinical findings support the opinions. The Commissioner may reject an uncontradicted opinion of a treating or examining medical professional only for "clear and convincing" reasons supported by substantial evidence in the record. See Lester, 81 F.3d at 831. While a treating professional's opinion generally is accorded superior weight, if it is contradicted by an examining professional's opinion which is supported by different independent clinical findings, the Commissioner may resolve the conflict. See Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995). A contradicted opinion of a treating or examining professional may be rejected only for "specific and legitimate" reasons supported by substantial evidence. See Lester, 81 F.3d at 830. This test is met if the Commissioner sets out a detailed and thorough summary of the facts and conflicting clinical evidence, states her interpretation of the evidence, and makes a finding. See Magallanes v. Bowen, 881 F.2d 747, 751-55 (9th Cir. 1989). Absent specific and legitimate reasons, the Commissioner must defer to the opinion of a treating or examining professional. See Lester, 81 F.3d at 830-31. The opinion of a non-examining professional, without other evidence, is insufficient to reject the opinion of a treating or examining professional. See id. at 831. In any event, the Commissioner need not give weight to any conclusory opinion

13

supported by minimal clinical findings.  See Meanel v. Apfel, 172 F.3d 1111, 1113 (9th Cir. 1999) (rejecting treating physician's conclusory, minimally supported opinion); see also Magallanes, 881 F.2d at 751.

Regarding Dr. Boakye, the ALJ stated:

> My RFC assessment is supported by Dr. Dang's report and opinion (Exhibit 4F), and the persuasive evidence.  At Exhibits 10F and 13F, p. 4, the treating physician, Dr. Douglas Boakye, seems to be assessing the claimant's employability for welfare purposes rather than disability, and there is no specific basis given for Dr. Boakye's bare conclusion that the claimant is unable to perform any type of work.  I am not obliged to accept this unsupported opinion, which was pretty clearly intended to assist Ms. Franklin in securing welfare benefits.  (citation omitted). . . .

Plaintiff argues the ALJ erred in rejecting Dr. Boakye's opinion because: (1) the ALJ relied on Dr. Dang's opinion which was formed before her November 2005 automobile accident which caused her low back impairment; (2) Dr. Boakye's opinion is supported by an earlier opinion expressed by Dr. Bhatega in July 2005; (3) Dr. Boakye's opinion is supported by other objective evidence which explains plaintiff's pain; (4) the ALJ's statement that Dr. Boakye's opinion was provided only to assist plaintiff in obtaining benefits is based on nothing more than speculation.

Addressing plaintiff's last argument first, the court agrees that the ALJ's apparent conclusion that Dr. Boakye's opinions were formed for the purpose of aiding plaintiff in obtaining benefits could only be based on speculation as there is no evidence to this effect.  Therefore, on its own, this statement could not serve as a proper reason for rejecting Dr. Boakye's opinion.

As to the ALJ's reliance on Dr. Dang's opinion to support his residual functional capacity assessment, the court finds no error.  For the reasons discussed above, the court concludes, as did the ALJ, that the evidence does not support the existence of a severe impairment relating to plaintiff's back.  Therefore, as to the effect of her other impairments on plaintiff residual functional capacity, Dr. Dang's report constituted substantial evidence.

/ / /

Next, as to plaintiff's contention that Dr. Boakye's opinion is consistent with the

opinion of Dr. Bhatega expressed in July 2005, the court notes that plaintiff references CAR 177 as indicating Dr. Bhatega's opinion.  The document at CAR 177 is an "Ambulatory Healthcare Services Triage Form" completed by a nurse at Highland Hospital.  The nurse reported: "Pt. in today requesting that Dr. Bhatega provide info. to Dept. of Social Services regarding her condition including new dx. of arthritis at [right] knee."  Plaintiff told the nurse that she wanted her doctor "to emphasize that she is unable to work because of her health problems."  Contrary to plaintiff's characterization of the document, it does not appear to represent Dr. Bhatega's opinion (or any other doctor's opinion for that matter), but merely is a record of plaintiff's request that her doctors "emphasize" that she cannot work.  Plaintiff has pointed to no other portion of the record which represents any medical opinion expressed by Dr. Bhatega.

Finally, the court considers whether, contrary to plaintiff's argument, the ALJ was correct in concluding that Dr. Boakye's opinion was not supported by objective medical findings. Dr. Boakye expressed his opinion as to plaintiff's functional capacity on two occasions – a March 14, 2006, "Treating Source Statement," and a May 9, 2007, functional assessment prepared for Alameda County Social Services.  Both were based largely on plaintiff's history of chronic pain complaints.  Neither referenced any objective findings to support the doctor's conclusions.  In addition, the March 2006 assessment appears somewhat inconsistent in that, on the one hand, Dr. Boakye stated that plaintiff could stand/walk for a full eight-hour workday but, on the other hand, stated that she could not perform any kind of full-time work due to pain.  It seems that, if plaintiff's pain does not preclude standing and/or sitting for a full workday, it should not preclude at least sedentary full-time work, as the ALJ found.

For all these reasons, the court concludes that the ALJ did not err with respect to his evaluation of Dr. Boakye's opinions.

/ / /

/ / /

### V.  CONCLUSION

Based on the foregoing, the court concludes that the Commissioner's final decision is based on substantial evidence and proper legal analysis.  Accordingly, IT IS HEREBY ORDERED that:

        1.    Plaintiff's motion for summary judgment (Doc. 17) is denied;

        2.    Defendant's cross-motion for summary judgment (Docs. 19 & 20) is granted; and

        3.    The Clerk of the Court is directed to enter judgment and close this file.

DATED:  September 28, 2009

                                      **CRAIG M. KELLISON**
                                      UNITED STATES MAGISTRATE JUDGE